Hubert J. Flynn
vs.                         } Eq. No. 10473.
Kate Conley Flynn

June 18, 1931.

BLODGETT, P. J. Heard upon bill, answer and proof.

Bill is brought to establish an alleged partnership between the complainant and his brother, Leo P. Flynn, deceased, and prays for an accounting of the assets of said partnership.

Leo P. Flynn was a resident of the City of New York at the time of his decease. Said Leo, during his lifetime, was engaged in the business of promoting and managing boxing contests. The respondent claims and is in possession of all the property, real and personal, of her husband. Complainant is also engaged in the business of promoting and managing boxing contests in Providence, where he resides.

No agreement in writing evidencing a partnership exists. The fact as to whether a partnership existed depends upon oral testimony and inferences drawn from acts of complainant and said Leo, and the terms and conditions of such alleged partnership must be determined in the same manner.

Complainant claims that in 1910 his brother, Leo, came to Providence and that then and there they entered into a partnership agreement on a fifty-fifty basis, and that this agreement existed up to the time of Leo's death in 1930. What the terms and conditions were, how the expenses were to be shared, what were the duties of the respective partners, where and how the business was to be conducted, where and how an accounting should be had must all be determined by the acts of the parties as brought out in the testimony.

During the twenty years alleged continuance of the partnership there never has been an accounting between the alleged partners. Complainant testifies that on certain interviews with his brother during this long period, and such interviews were comparatively infrequent, he would be put off with one excuse or another in his requests for such an accounting. One witness, George Capron, testified for complainant that in 1914 he had a conversation with Leo in which Leo referred to his brother, Hubert, as his partner. Several other witnesses testified that from the acts and conduct of the two brothers on certain occasions, they regarded them as partners.

Some of the witnesses for complainant were former fighters. The industry was often referred to as the "cauliflower industry" and the string of fighters as the "stable of Leo." The admissions of said Leo which they heard on certain occasions referred to Hubert, his brother, as "my partner," and that Leo once spoke of "our stable" referring to the relations existing between Hubert and himself, and also to Leo speaking at one time of "our fighters;" and that Leo had once said: "My partner will take care of me."

It is needless to say such testimony fails to establish a partnership in the legal and accepted meaning of the term. There may well have been certain dealings between the brothers during this term of twenty years in which on specific occasions and for certain purposes they were partners, but such testimony would not prove a general partnership for the entire period. It would simply prove certain acts from which such a partnership as is claimed might be inferred.

William F. Flynn, a brother of complainant, testified to a conversation with respondent on the funeral train coming from New York, in which respondent said she was going to give

Hubert $2,500 and that she had everything in black and white, meaning the accounts between Hubert and Leo. The Court absolutely discredits this testimony. John J. Fox, the undertaker in charge of the funeral train, testified that the respondent occupied a section of the car on the funeral train and did not leave said section during the entire trip from New York; that he sat in a seat by the entrance to this section during the entire trip, and that from the time the train left the station in New York until its arrival in Providence, no person entered this compartment. Fox is a disinterested witness whose testimony is believed by the Court.

The testimony of several witnesses for respondent is very direct that no such partnership agreement ever existed. The testimony of complainant at this trial differs in some material respects from that given at a former hearing for a preliminary injunction in this Court. He further testified when he handled a fight he would receive the proceeds, deduct the expenses, and whatever he thought it was fair for him to keep, would keep, and send the rest to Leo, and that this was the only money he ever received. When certain checks from Leo, payable to his order, were shown him, he testified that the words "compensation" or "commission" that appeared on the face of the checks were not there when he received same and must have been added since the checks were returned. These checks would seem to show that whatever services complainant rendered to his brother Leo were paid for at the conclusion of such services and would sustain the contention that whatever services complainant rendered were special services and not part of his duties under any general partnership agreement.

The Court is of the opinion that complainant has failed to sustain the burden of proof and the bill must be dismissed.

For complainant: Fergus J. McOsker.

For respondent: Clifford A. Kingsley.